UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
VAN DOUGLAS WALKER, IQUANE          :
WRIGHT-WALKER,                      :
                                    :
                 Plaintiff,          :
                                    :
    -against-                        :
                                    :
MIRBOURNE NPN 2 LLC, JUDGE NOACH    :
DEAR, LAWRENCE KNIPEL, LETITIA      :
JAMES, CITY OF NEW YORK, NEW YORK   :
CITY DEPARTMENT OF FINANCE, OFFICE  :
OF THE SHERIFF OF THE CITY OF NEW   :
YORK, SHERIFF JOSEPH FUCITO, JOHN   :
DOE 1, JOHN DOE 2, OTHER UNKNOWN    :
KINGS COUNTY SHERIFF'S DEPUTIES AND :
SUPERVISORS,                        :
                                    :
              Defendants.          :
                                    :
------------------------------------------------------------ X

**REPORT AND**
**RECOMMENDATION**

22 Civ. 2382 (RPK) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

On April 26, 2022, pro se Plaintiffs Van Douglas Walker and Iquane Wright-Walker

(collectively, "Plaintiffs") commenced this action against Mirbourne NPN 2 LLC (hereafter,

"Mirbourne"),[1] and the City of New York, the New York City Department of Finance, the Office

of the Sheriff of the City of New York (hereafter, "NYCSO"), Sheriff Joseph Fucito, and other

unknown Kings County Sheriff's deputies and supervisors (collectively, "the City Defendants").[2]

---

[1] Mirbourne is not a party to this motion.  On December 8, 2022, Mirbourne filed an answer.
ECF No. 37.

[2] Plaintiffs also brought the action against Judge Noach Dear, Administrative Judge Lawrence
Knipel, and New York State Attorney General Letitia James.  See ECF No. 34 ¶¶ 28–32.  The
Court dismissed the claims against Judge Dear because he had passed away, see Dkt. Entry
11/8/2022 Order, and the claims against A.J. Knipel and A.G. James for failure to properly serve
the summons and complaint, see Dkt. Entry 12/5/2022 Order.

The complaint[3] alleges the following claims: (1) malicious prosecution under Section 1983, see ECF No. 34 ⁋ 58[4]; (2) deprivation of property without due process under 42 U.S.C. § 1983; Title VI of the Civil Rights Act; the New York Human Rights Law, N.Y. Exec. Law § 296; and the New York Equal Access to Justice Act, C.P.L.R. § 8601, id. ⁋⁋ 58, 68-69; (3) invasion of privacy and loss of liberty pursuant to Section 1983; the New York State Constitution; and Section 296, id. ⁋⁋ 61[5], 79; (4) unlawful entry under Section 1983 and the New York State Constitution, id. ⁋ 63 (5) excessive force under Section 1983 and the New York State Constitution, id. ⁋⁋ 64, 68; (6) "failure to prevent conspiracy" under 42 U.S.C. §§ 1985 and 1986, id. ⁋ 66;[6] and (7) trespass by John Does 1 and 2, and the Kings County Sheriff's deputies

---

[3] Plaintiffs filed their first complaint on April 26, 2022. See ECF No. 1. On November 11, 2022, Plaintiffs filed a "Signed Complaint," which is identical to the original except that it includes Plaintiff Iquane Wright-Walker's signature. See ECF No. 34. The complaints omit page 19. See ECF Nos. 1, 34 at 18-20. At the end of page 18, the complaints include a heading for "Breach of Good Faith and Fair Dealing," but they do not include any text under that heading. See id. at 18. The complaints skip to page 20, which does not contain any allegations pertaining to breach of good faith and fair dealing. Id. at 18-20.

[4] Plaintiffs refer to Due Process rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the rights of notice of accusation, to confront his "[would be] accusers", and his presumption of innocence. See ECF No. 34 ⁋ 58. These criminal rights do not apply in a foreclosure proceeding.

[5] Plaintiffs refer to the First, Ninth and Fourteenth Amendments of the United States Constitution, although they do not refer to any rights found under the First and Ninth Amendments. See ECF No. 34 ⁋ 61.

[6] In Count V, ECF No. 34 ⁋⁋ 65-66, Plaintiffs allege that Defendants failed to prevent a conspiracy to allow the violation of Plaintiffs' rights against "an execution of a discriminatory and retaliatory trespass and eviction" under the following statutes: 42 U.S.C. § 3601 [Declaration of policy: "It is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."]; 42 U.S.C. § 3604 ["Discrimination in the sale or rental of housing and other prohibited practices"]; 42 U.S.C. § 3617 ["Interference, coercion, or intimidation" relating to certain housing rights]; 42 U.S.C. §§ 12203 ["Prohibition against retaliation and coercion" as to those exercising rights under the chapter for "Equal Opportunity for Individuals with Disabilities"]. The claim also refers to "34-18-46, 34-37-4, 34-37-5.1", but the reference is unclear. Plaintiffs do not allege claims directly under these statutes.

and supervisors in violation of the New York State Constitution and Section 296, id. ¶ 81.[7]  See ECF No. 34.  Before the Court is the City Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  See ECF No. 23.  For the following reasons, I respectfully recommend that the District Court grant the motion to dismiss the claims against the City Defendants.  I also respectfully recommend that Plaintiffs be given leave to replead the complaint as to the City Defendants within 30 days of the adoption of the report and recommendation, if it is adopted, but only as to those claims as to which they can overcome the issues discussed herein.

## I. Background

The following facts are derived from Plaintiffs' complaint and are assumed to be accurate for the purposes of the motion.  See ECF No. 34.

On or about November 13, 2014, Defendant Mirbourne commenced a foreclosure action against Plaintiff Walker in New York Supreme Court, Kings County, concerning a real property on 494 Halsey Street, Brooklyn, NY (hereafter, "the Property").  Id. ¶¶ 2-3.  Mr. Walker was the owner of the Property; Plaintiff Wright-Walker is Mr. Walker's adult son.  Id. ¶¶ 15-16.  On March 22, 2016, Mr. Walker and Mirbourne stipulated that the Property would be sold within six months; the mortgage would be paid off with the proceeds of the sale; and the foreclosure action would be ended.  Id. ¶ 4.  The stipulation provided that if Mr. Walker did not sell the Property

---

The complaint cites to the New York Real Property Law § 265-a(2) (c ), the "Home Equity Theft Prevention Act," in the opening paragraph.  See ECF No. 34 ¶ 1.  It also contains a reference to 15 U.S.C. § 1635, which is the "Right of rescission as to certain transactions."  Id. ¶ 2.  Plaintiffs do not mention either statute again or connect them to any facts in the complaint.

[7] Plaintiffs head Count VI as "Unlawful Seizure, and Excessive Force", Count VII as "Invasion of Privacy", and Count IX at "Trespass", suggesting state common law claims, ECF No. 34 ¶¶ 6, 78, 80 (headings above each), but the text of the claims refers to federal and New York statutes. The Court's analysis below addresses the claims made, not the headings.

within six months, Mirbourne would obtain title to the Property for the purposes of selling it to pay the mortgage. Id. ¶ 5.

Mr. Walker was unable to sell the Property within six months, and the New York Supreme Court granted Mirbourne title to the Property per the stipulation. Id. ¶¶ 37-38. Mr. Walker moved in state court to vacate the stipulation "based on fraud and misrepresentation . . . and for lack of subject matter jurisdiction and lack of jurisdiction." Id. ¶ 39. On July 30, 2018, the state court denied the motion without a hearing, found that Mirbourne was entitled to possession of the Property, and ordered that Mr. Walker and all other occupants be removed from the Property. Id. ¶¶ 40-41. Mr. Walker appealed the July 30, 2018 order and sought to stay its enforcement in the New York Appellate Division, Second Department; the Second Department denied the request. See Mirbourne NPN 2 LLC v. Walker, No. 2018-09278, 510700/1, 2018 WL 4089418 (2d Dep't Aug. 28, 2018). Mr. Walker also sought to enjoin the July 30, 2018 order in this Court; the Court dismissed for lack of subject matter jurisdiction. See Walker v. Mirbourne NPN 2LLC, No. 18 Civ. 5211 (BMC) (CP), 2018 WL 4494875, at *1-3 (E.D.N.Y. Sept. 19, 2018).

On August 13, 2018, Mirbourne "sought to enforce the March 22, 2016 Stipulation through use of the [NYCSO]" and, "with the assistance of Defendant Sheriff Deputies John Does 1 and 2 and other Deputies and Supervisors of Defendant NYCSO," removed Plaintiffs and Mr. Walker's daughter from the Property. Id. ¶¶ 7, 11. The deputies entered the Property "with hands on their service weapons" and threatened to arrest Mr. Walker "without any legal basis or probable cause" and to have his daughter given to foster care. Id. ¶ 11. Plaintiffs "offered no resistance and cooperated fully with Defendants," and they left the Property. Id. ¶ 44.

On January 17, 2019, Mirbourne "recorded a Deed In Lieu of Foreclosure for the Property, illegally seizing Plaintiff's Property as if by eminent domain." Id. ¶ 48. Plaintiffs' then-counsel wrote a letter to the state court expressing concern over the recording of the deed, arguing that it was "an unauthorized and invalid sales transaction" because the court had "already affirmatively awarded Mirbourne title" to the Property. Id. ¶ 49. In February 2020, the state court issued a judgment of foreclosure and sale for the Property. Id. ¶ 50.

Plaintiff alleges, without elaboration, that the alleged actions of City Defendants were "the proximate result of a custom, policy, pattern or practice of deliberate indifference" by the City "to the repeated violations of the constitutional rights of citizens by Sheriff Deputies from the Defendant NYCSO." Id. ¶¶ 73-75. Plaintiff asserts that the City is therefore liable under Section 1983 pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Id. ¶ 71.

## II.    Discussion

### a.    F.R.C.P. 12(b)(6) Legal Standard

"A complaint will survive a motion to dismiss so long as it 'contain[s] sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In making that assessment, courts "accept all [the plaintiff's] factual allegations . . . as true and draw all reasonable inferences in [their] favor." Menaker v. Hofstra Univ., 935 F.3d 20, 30 (2d Cir. 2019). "Specific facts are not necessary[,]" and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); Port Dock & Stone Corp. v. Oldcastle Ne., Inv., 507 F.3d 117, 121 (2d Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Although this plausibility pleading standard is forgiving, a court is not required to credit "legal conclusion[s] couched as . . . factual allegation[s]" or "naked assertions devoid of further factual enhancement."  Mandala, 975 F.3d at 207 (internal quotation marks omitted); see Grytsyk v. Morales, 527 F. Supp. 3d 639, 655 (S.D.N.Y. 2021) ("Moreover, threadbare and conclusory allegations of injury, without reference to specific physical injuries, do not suffice as a matter of law.").  This Court is obliged to liberally construe pro se complaints.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004) ("[W]hen [a] plaintiff proceeds pro se . . . a court is obliged to construe his pleadings liberally[.]") (citing Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001)).

In considering the motion to dismiss, the Court observes that the Doe Defendants are two Kings County Sheriff's deputies.  City Defendants request that the Court dismiss the claims against the Doe Defendants even though they have not appeared by arguing that the claims against them fail as a matter of law and that Plaintiffs should not be allowed to amend to name the John Does once they are identified.  See ECF No. 24 at 9-10.  Plaintiffs object to this effort to dismiss the Doe claims because the Doe Defendants have not yet been identified.  ECF No. 32 at 5.  The Court agrees that the present claims should be dismissed but does not agree that Plaintiffs should be prohibited from amending the complaint as to Doe Defendants.

This Court "may dismiss a complaint sua sponte for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard."  Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 313 (S.D.N.Y. 2001) (citing Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991)).  For example, the Court applied this standard and granted a sua sponte motion to dismiss in Ali v. Ramos, No. 16 Civ. 01994 (ALC), 2018 WL 1353210, at *1 n.1 (S.D.N.Y. Mar. 14, 2018), because the plaintiff had had an opportunity to be heard through the briefing on the

appearing defendants' motion to dismiss.  See, e.g., Molina v. James, No. 21 Civ. 3144 (RPK) (JMW), 2022 WL 813815, at *8 (E.D.N.Y. Mar. 17, 2022) (after giving pro se plaintiff an opportunity to oppose proposed dismissal of claims against defaulting defendant, court dismissed such claims because they were insufficient to state a claim); Fox v. City of New York, 18 Civ. 9661 (AT), 2019 WL 3003993, at *3 (S.D.N.Y. July 10, 2019) (dismissing Section 1983 claims against all City defendants, including non-appearing John Doe defendant).

In this case, Plaintiffs had an opportunity to oppose the motion to dismiss, and they did in fact oppose to the motion to dismiss.  Because, for the reasons stated below, Plaintiffs fail to plead a claim against any of the City Defendants, including the John Doe Sheriff Defendants, the Court respectfully recommends that the claims against all City Defendants be dismissed, and that Plaintiffs be granted leave to replead only to the extent that they correct the deficiencies identified herein, if possible.

**b.  Claims Against The New York City Department of Finance And NYCSO**

New York City Charter § 396 provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."  Agencies of New York City are thus non-suable entities.  See Nnebe v. Daus, 644 F.3d 147, 158 n.6 (2d Cir. 2011) ("It is well settled . . . that, as a general matter, agencies of New York City are not suable entities . . . ."); Ortega v. Samaritan Vill. Myrtle Ave. Men's Shelter, No. 18 Civ. 5995 (KAM) (RER), 2020 WL 1043305, at *4 (E.D.N.Y. Mar. 4, 2020) ("[S]uits must be brought against the City of New York and not any agency or subdivision.").  Plaintiffs agree that the Department of Finance and NYCSO cannot be sued and asks that the Court "allow[] amendment of the [c]omplaint or substitution of parties to reflect these Defendants properly named as 'City of New York.'"  ECF No. 32 at 3 (pdf pagination).  The proposed amendment is unnecessary because the City of New

York is already named as a defendant.  It is therefore respectfully recommended that all claims against the Department of Finance and NYCSO be dismissed.

### c.  Federal Claims

#### i.  Section 1983 Claims Against The City And Sheriff Fucito Fail

##### 1.  Municipal Liability

Under Section 1983, a municipality may not be held liable solely on the basis of respondeat superior.  See Monell, 436 U.S. at 694-95.  Plaintiffs who seek to impose liability on local governments under Section 1983 must "prove that [his or her] injury was caused by 'action pursuant to an official municipal policy,'" which includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Monell, 436 U.S. at 691).  Under § 1983, a municipality may only be liable for the violation of a person's civil rights if the moving force behind that violation was an official policy or custom of the municipality."  Monell, 436 U.S. at 690–94; Agosto v. New York City Dep't of Educ., 982 F.3d 86, 97 (2d Cir. 2020).  A § 1983 plaintiff "may establish the pertinent custom or policy by showing that the municipality, alerted to the possible [constitutional violation], exhibited deliberate indifference."  Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).  A single instance of conduct is not enough to establish a policy or custom for the purposes of municipal liability.  See Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) ("[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."); Moskowitz v. Great Neck Union Free Sch. Dist., No. 20 Civ. 1659 (KAM) (SIL), 2021 WL 4268138, at *11 (E.D.N.Y. Aug. 4, 2021), report & recommendation adopted, 2021 WL 3878777 (E.D.N.Y. Aug. 31, 2021) ("[C]auses of action based on the conduct of a single individual or as to an individual

instance are not sufficient to establish an overarching policy or practice to render <u>Monell</u> liability upon a municipality."). "[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations" necessary for a § 1983 municipal deliberate-indifference claim. <u>Connick</u>, 563 U.S. at 63 n.7; <u>Rodriguez v. City of New York</u>, No. 21 Civ. 1649 (AMD) (RLM), 2022 WL 17750094, at *9 (E.D.N.Y. June 7, 2022) ("A plaintiff alleging a municipality's deliberate indifference on a failure to supervise theory must cite violations that occurred before the conduct at issue took place"). "A general and conclusory allegation of a municipal policy or custom fails to state a plausible claim." <u>Green v. Dep't of Educ. of City of New York</u>, 16 F.4th 1070, 1077 (2d Cir. 2021) (internal quotation marks omitted); <u>see</u> <u>Weaver v. City of N.Y.</u>, No. 13 Civ. 20 (CBA) (SMG), 2014 WL 950041, at *7 (E.D.N.Y. Mar. 11, 2014) ("[V]ague and conclusory assertions are not sufficient to state a claim of municipal liability under <u>Monell</u>.").

Plaintiffs allege that the City of New York displayed a "custom policy, pattern or practice of deliberate indifference" towards constitutional violations by the Kings County Sheriff's deputies. ECF No. 34 ¶ 73. Plaintiffs do not allege, however, any violations save for those that make up the conduct at issue in this case. <u>See</u> <u>Rodriguez</u>, 2022 WL 17750094, at *9. These allegations made in a conclusory fashion that an unconstitutional policy existed are not sufficient to state a § 1983 claims against the City. Even if Plaintiffs were to have alleged the existence of a relevant policy, because they fail to make out a claim of an underlying constitutional violation causally connected to that policy, as discussed below, the <u>Monell</u> argument must fail. <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).

### 2.  Claims Against Sheriff Joseph Fucito

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Warren v.</u>

Pataki, 823 F.3d 125, 136 (2d Cir. 2016) (internal quotation marks omitted).  A plaintiff may

establish "personal involvement" by showing that:

> (1) [T]he defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or
> appeal, failed to remedy the wrong, (3) the defendant created a policy or custom
> under which unconstitutional practices occurred, or allowed the continuance of
> such a policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference . . . by failing to act on information indicating that
> unconstitutional acts were occurring.

Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (internal quotation marks

omitted).  Failure to "allege facts establishing the personal involvement" of a defendant is "fatal

to [a] claim under [Section] 1983."  Costello v. City of Burlington, 632 F.3d 41, 49 (2d Cir.

2011); see Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (holding that to state a

§ 1983 deliberate-indifference claim, "a plaintiff must plead and prove that each Government-

official defendant, through the official's own individual actions, has violated the Constitution")

(internal quotation marks omitted); Chambers v. Toulon, No. 22 Civ. 5463 (GRB) (ARL), 2022

WL 11729696, at *4 (E.D.N.Y. Oct. 20, 2022) (dismissing for failure to state a claim where the

plaintiff "omitted any factual allegations of conduct or inaction attributable to [the defendant]").

City Defendants move to dismiss the Section 1983 claims against Sheriff Fucito for lack

of personal involvement, and Plaintiffs do not address this argument in their opposition.  See

ECF Nos. 24 at 7, 32.  Plaintiffs do not allege that Sheriff Fucito participated directly in the

alleged constitutional violations, which they allege were done by unnamed Kings County

Sheriff's deputies.  See ECF No. 34 ¶¶ 40-47.  Plaintiffs do not allege that Sheriff Fucito knew of

the alleged violations, created a policy or custom under which the violations occurred, was

grossly negligent in supervising subordinates, or exhibited deliberate indifference.  Indeed,

Plaintiffs mention Sheriff Fucito only once in the complaint and do not provide factual

allegations as to his involvement.  See ECF No. 34 ¶ 23.  Plaintiffs fail to state a § 1983 claim against Sheriff Fucito.

### ii.  Failure To State A Claim Against The Individual Defendants

Plaintiffs allege § 1983 claims for deprivation of property, invasion of privacy, unlawful entry, excessive force and malicious prosecution, along with claims under § 1985, § 1986 and Title VI.[8]  See ECF No. 34 ¶¶ 55-77.   City Defendants argue that none of these allegations states a claim and that the federal claims are untimely.  See ECF No. 24 at 10-18.

### 1.  Deprivation Of Property

### a.  <u>Rooker-Feldman</u> Doctrine

As an initial matter, the Court must look to see what impact Plaintiffs' claims in this action might have on the prior state court action.  "Where a federal suit follows a state suit, the former may be prohibited by the so-called <u>Rooker-Feldman</u> doctrine in certain circumstances." <u>Hoblock v. Albany Cnty. Bd. of Elections</u>, 422 F.3d 77, 83 (2d Cir. 2005).  "<u>Rooker-Feldman</u> is a limited doctrine aimed at cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments."  <u>McKithen v. Brown</u>, 626 F.3d 143, 154 (2d Cir. 2010) (internal quotation marks omitted); <u>see</u> <u>Latino Officers Ass'n v. City of New York</u>, 253 F. Supp.

---

[8] The City Defendants argue in their motion to dismiss that Plaintiff asserted a § 1983 claim for false arrest.  See ECF No. 24 at 15.  Plaintiffs respond that they did not intend to bring a false-arrest claim.  See ECF No. 32 at 5 (pdf pagination).  To the extent that Plaintiffs assert a false-arrest claim in their complaint, Plaintiffs fail to state a claim because, as Plaintiffs acknowledge in their opposition, Plaintiffs do not allege they were arrested or confined.  Id.; Guan v. City of New York, 37 F.4th 797, 804 (2d Cir. 2022) ("In New York, to prevail on a [§ 1983] false arrest claim, a plaintiff must show that: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.") (internal quotation marks omitted).

2d 771, 778 (S.D.N.Y. 2003) ("The Rooker-Feldman doctrine embodies the principle that among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments.  Thus, a federal district court lacks jurisdiction over any claim that directly challenges, or is inextricably intertwined with, a prior state court decision.").  The Rooker-Feldman doctrine applies and deprives the district court of jurisdiction when four requirements are met: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."  Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted).  "[C]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine."  Fequiere v. Tribeca Lending, No. 14 Civ. 812 (RRM) (LB), 2015 WL 1412580, at *7 (E.D.N.Y. Mar. 20, 2015) (internal quotation marks omitted); see Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) (per curiam); Murphy v. Riso, No. 11 Civ. 873, 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) (collecting cases).  A § 1983 due process challenge to a state court order is not the province of this Court, but, rather, it must be pursued through the state court system and by petitioning for a writ of certiorari to the United States Supreme Court.  See McKithen, 626 F.3d at 154-55 (finding that the court lacks jurisdiction to review plaintiff's § 1983 due process claim challenging a state court order).

Part of the relief requested by Plaintiffs challenges the underlying foreclosure proceedings, and the four requirements of Rooker-Feldman have been met as to those claims for relief.  See ECF No. 34 (page 20, Damages Clause).  First, Plaintiffs lost in state court when Mr. Walker's motion to vacate the stipulation was denied on July 30, 2018.  See ECF No. 34 ¶¶ 39-

40.  Second, Plaintiffs allege that the state court's July 30, 2018 order deprived Plaintiffs of their property; third, Plaintiff challenges the order pursuant to § 1983.  See id. ¶¶ 4-9, 41, 56, 58. Fourth, the July 30, 2018 order predated Plaintiffs' commencement of this federal action.  See ECF No. 1.

Rooker-Feldman does not bar certain claims, such as state law claims for fraud, if the plaintiff seeks damages for injuries suffered from the defendants' alleged wrongdoing and the adjudication "does not require the federal court to sit in review of the state court judgment." Francis v. Nichols, No. 16 Civ. 1848 (CS), 2017 WL 1064719, at *4 (S.D.N.Y. Mar. 21, 2017); see Vossbrinck, 773 F.3d at 427 (allowing plaintiff to proceed with claims based on alleged fraud in obtaining the foreclosure judgment).   To the extent that Plaintiffs seek relief from the state court foreclosure judgment or seek to establish a fact in this litigation that is inconsistent with and would invalidate the state court foreclosure judgment, Rooker-Feldman does not allow that relief.  See Brady v. IGS Realty Co. L.P., No. 19 Civ. 10142 (PAE), 2020 WL 5414683, at *7 (S.D.N.Y. Sept. 8, 2020), aff'd, No. 20 Civ. 3512, 2021 WL 4302737 (2d Cir. Sept. 22, 2021), & aff'd sub nom. Brady v. Friedlander, No. 20 Civ. 3515, 2021 WL 5872264 (2d Cir. Dec. 13, 2021) (quoting Wallis v. Fifth Third Bank, 443 F. App'x 202, 205 (7th Cir. 2011) ("[The plaintiff] cannot circumvent the Rooker-Feldman doctrine by recasting a request for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations.")).  Many of Plaintiffs' allegations concern post-judgment enforcement.[9]   These claims are not prohibited by the Rooker-Feldman doctrine, so the Court

---

[9] Plaintiffs mention fraud and misrepresentation in connection with the 2016 stipulation, see ECF No. 34 ¶ 39, and that that claim was adjudicated in state court, id. ¶¶ 40-41.  Plaintiffs do not appear to raise fraud as a cause of action in this case, although this is an example of the type of claim that might survive a Rooker-Feldman challenge.  In this case, a putative fraud claim might

will examine them below.  See, e.g., Borrani v. Nationstar Mortg. LLC, No. 19 Civ 2204, 820 F.

App'x 20, 22 (2d Cir. 2020); Hylton v. J.P. Morgan Chase Bank, N.A., 338 F. Supp. 3d 263, 278

(S.D.N.Y. 2018).

### b. Due Process Violation

Even if this Court could review the state court proceedings, Plaintiffs have not shown a

violation of their due process rights.  "In order for a person to establish that the state has

deprived him of property without due process," the plaintiff must (1) "identify a property right,"

(2) "show that the state has deprived him of that right," and (3) "show that the deprivation was

effected without due process."  Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990) (emphasis in

original).  In assessing whether a deprivation of property "was effected without due process,"

courts distinguish between "(a) claims based on established state procedures and (b) claims

based on random, unauthorized acts by state employees."  Rivera-Powell v. New York City Bd.

of Elections, 470 F.3d 458, 465 (2d Cir. 2006).  "Where the government deprives a plaintiff of

some interest pursuant to an established procedure, due process is generally satisfied so long as

some form of hearing is provided before the individual is finally deprived of the property

interest."  Newton v. Major Dev. 52 Corp, No. 19 Civ. 3469 (LLS), 2019 WL 2357533, at *2

(S.D.N.Y. May 31, 2019) (citing Nnebe, 644 F.3d at 158).  "Although one need not exhaust state

remedies before bringing a Section 1983 action claiming a violation of procedural due process,

one must nevertheless prove as an element of that claim that state procedural remedies are

inadequate."  Marino v. Ameruso, 837 F.2d 45, 47 (2d Cir. 1988); see Ludd v. Rockville Ctr.

Union Free Sch. Dist., No. 86 Civ. 2413 (RR), 1990 WL 137388, at *4 (E.D.N.Y. Sept. 17,

---

be limited for other reasons, such as estoppel.  See, e.g., Fortunatus v. Clinton Cnty., N.Y., 937
F. Supp. 2d 320, 332 (N.D.N.Y. 2013) (plaintiff's due process and equal protection claims were
barred where plaintiff had raised the same claims in state court and the court had decided them).

1990) ("While a civil rights litigant has no obligation to exhaust state remedies, where the constitutional violation alleged is procedural rather than substantive, a plaintiff must stand ready to prove that the full panoply of procedures provided by the state is inadequate, and not focus simply on an alleged deficiency in one stage, ignoring those safeguard and remedies that are built into the whole.") (internal quotation marks & citations omitted). "[P]redeprivation proceedings in state court," such as foreclosure proceedings, "generally provide adequate process," and a plaintiff faced with an adverse outcome "pursuant to such proceedings cannot allege that she was deprived of her property without due process." Newton v. Major Dev. 52 Corp, No. 19 Civ. 3469 (LLS), 2019 WL 2357533, at *2 (S.D.N.Y. May 31, 2019); see Stern v. Regency Towers, LLC, 886 F. Supp. 2d 317, 324 (S.D.N.Y. 2012) (finding that plaintiff received adequate due process where plaintiff participated in "lengthy state court proceedings in which [plaintiff] was given ample opportunity to contest" the legality of his removal from his property).

Plaintiffs claim that they were denied due process when the state court denied the motion to vacate the stipulation granting Mirbourne title to the Property on July 30, 2018, without a hearing. ECF No. 34 ¶¶ 40-41. The record shows that the state court had already engaged in proceedings concerning the stipulation and granted a motion to enforce the stipulation in 2018, see id. ¶¶ 35, 38, and that Plaintiffs appealed the July 30 order to the Second Department, Mirbourne, 2018 WL 4089418. Plaintiffs' own pleadings show that the state court considered and decided the relevant motions. Id. ¶¶ 35, 38. It is not within the purview of the federal courts to tell the state courts how to conduct their proceedings with regard to scheduling hearings. See Marino, 837 F.2d at 47; Harris v. Mills, 572 F.3d 66, 76 (2d Cir. 2009) (affirming dismissal of deprivation-of-property claim where, although plaintiff did not receive a hearing, the pre-deprivation proceedings were "enough to satisfy due process"). In short, Plaintiffs fail to state a

15

§ 1983 claim for deprivation of property under the Due Process Clause.  See Green v. Kadilac Mortg. Bankers, Ltd., 936 F. Supp. 108, 114-15 (S.D.N.Y. 1996).

### c.  Quasi-Judicial Immunity

The Supreme Court has held that "state judges are absolutely immune from liability for their judicial acts."  Briscoe v. LaHue, 460 U.S. 325, 334 (1983).  "In addition, some officials who are not judges but 'who perform functions closely associated with the judicial process' have also been accorded such immunity."  Dorman v. Higgins, 821 F.2d 133, 137 (2d Cir. 1987) (citation omitted) (quoting Cleavinger v. Saxner, 474 U.S. 193, 200 (1985)).  Quasi-judicial immunity is granted based on "functional categories, not the status of the defendant."  Briscoe, 460 U.S. at 342.  Courts in this Circuit "regularly grant quasi-judicial, absolute immunity to individuals executing court orders."  Harley v. Guida, No. 19 Civ. 6152 (EK) (MMH), 2022 WL 4539510, at *3 (E.D.N.Y. Sept. 28, 2022).   A sheriff executing a state court order in a foreclosure proceeding may be entitled to absolute quasi-judicial immunity.  See, e.g., Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, No. 17 Civ. 2164 (MPS), 2018 WL 2138631, at *2 (D. Conn. May 9, 2018).   Because a sheriff "is not empowered to review a facially valid court order," and "it is not within his scope of authority to question [its] legality," courts have extended quasi-judicial immunity to sheriffs executing a "facially valid court order." Tornheim v. Eason, 363 F. Supp. 2d 674, 677 (S.D.N.Y. 2005); see Bowers v. United States, 931 F. Supp. 2d 358, 367 (D. Conn. 2013) (collecting cases); Harley, 2022 WL 4539510, at *3 ("Where an official acts within the bounds of a facially valid court order, however, he has no obligation to independently research its validity; in fact, he has no authority to question its legality."); Newton, 2019 WL 2357533, at *2 (acknowledging that in "foreclosure proceedings pursuant to established state court proceedings," a sheriff is justified in obeying the facially valid mandate of the court) (citing Tornheim, 363 F. Supp. 2d at 677).  For example, in Maldonado v.

New York Cnty. Sheriff, No. 05 Civ. 8377 (JGK), 2006 WL 2588911, at *3 (S.D.N.Y. Sept. 6, 2006), the court granted defendant sheriff's motion to dismiss claims based on the sheriffs having evicted the plaintiff from her home based on a state court order.  The court found that the plaintiff had failed to allege facts supporting a claim of deprivation of property without due process or equal protection, and that the defendant sheriffs were entitled to quasi-judicial immunity.  See id.; Yan Ping Xu v. Suffolk Cnty., No. 19 Civ. 1362 (JMA) (ARL), 2021 WL 1163007, at *6 (E.D.N.Y. Mar. 26, 2021) (granting quasi-judicial immunity to sheriff defendants because they had a "duty to carry out mandates of the court"); Morris v. Katz, 11 Civ. 3556 (JG), 2011 WL 3918965 (E.D.N.Y. Sept. 4, 2011) (finding defendant city marshal was entitled to absolute quasi-judicial immunity "based upon his execution of a facially valid warrant of eviction in accordance with his duty to carry out mandates of the court").

Plaintiffs allege that the "acts and omissions of interference" by the Kings County Sheriff John Doe deputies "violated Plaintiff[s'] due process rights."  ECF No. 34 ¶ 58.  Construed liberally, Plaintiffs assert that the deputies violated Plaintiffs' due process rights in executing the state court's July 30, 2018 order to remove Plaintiffs from the Property.  In removing Plaintiffs, the deputies were acting in accordance with a state court order, which they did not have the authority to disobey.  Plaintiffs have not alleged that the court order was facially invalid or that the deputies "knew or should have known that the [order] was invalid."  Batista v. City of New York, No. 05 Civ. 8444 (KMK), 2007 WL 2822211, at *6 (S.D.N.Y. Sept. 25, 2007).  Plaintiffs have not alleged facts to support a claim of a loss of due process from the sheriffs' actions in enforcing the state court's order.   Quasi-judicial immunity requires the dismissal of the claims against the Kings County Sheriff deputies.  Id.

### 2. Malicious Prosecution

Despite the immunity protections available to the individual City Defendants, the Court will look at the substance of Plaintiffs' pleadings. "'To state § 1983 malicious prosecution claim a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law.'" Friend v. Gasparino, No. 20-3644, 2023 WL 2229363, at *3 (2d Cir. Feb. 27, 2023) (quoting Cornelio v. Connecticut, 32 F.4th 160, 178 (2d Cir. 2022) (internal quotation marks omitted)). To establish a malicious prosecution claim under either § 1983 or New York law, plaintiffs must prove "(1) the commencement or continuation of a criminal proceeding against [them], (2) the termination of the proceeding in [their] favor, (3) the absence of probable cause, and (4) that the proceeding was instituted with malice." Jeanty v. Cerminaro, No. 21 Civ. 1974, 2023 WL 325012, at *5 (2d Cir. Jan. 20, 2023) (quoting Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016)) (internal quotation marks & citation omitted); see Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted). As noted above, Plaintiffs do not allege that they were subject to criminal proceedings or that any proceeding was terminated in their favor; they therefore fail to state a claim for malicious prosecution. See Spear v. Town of W. Hartford, 954 F.2d 63, 68 (2d Cir. 1992) (affirming dismissal of malicious prosecution claim where plaintiff "was subject only to civil, not criminal, liability").

If Plaintiffs instead intended to assert a claim of malicious abuse of process, § 1983 "may not be predicated on a claim for malicious abuse of process." Spear, 954 F.2d at 68. In addition, a claim for malicious abuse of process requires that the allegedly abusive proceeding "must have been terminated in plaintiff's favor." City Partners, Ltd. v. Jamaica Sav. Bank, 454 F. Supp. 1269 (E.D.N.Y. 1978) (citing Tucker v. Maher, 497 F.2d 1309, 1316 (2d Cir. 1974)). The foreclosure proceedings did not terminate in Plaintiffs' favor.

### 3.  Unlawful Entry And Invasion Of Privacy

#### a.  Expectation of Privacy

"The Fourth Amendment protects the right of private persons to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." United States v. Snype, 441 F.3d 119, 130 (2d Cir. 2006) (internal quotation marks omitted). "The Fourth Amendment does not protect all subjective expectations of privacy, but only those that society recognizes as legitimate." Cassidy v. Chertoff, 471 F.3d 67, 76 (2d Cir. 2006) (internal quotation marks omitted). A "plaintiff can plead a Fourth Amendment seizure when he reasonably submits to an order to leave his home, even when the officers do not use physical force intentionally to restrain plaintiff and control his movements." Sheppard v. Leuze, No. 21 Civ. 2075 (KAM) (TAM), 2022 WL 2315981, at *4 (E.D.N.Y. June 27, 2022) (citations & quotation marks omitted). These rights are limited by the boundaries of a party's right to occupy the premises. A plaintiff has "no Fourth Amendment protection in premises he occupies wrongfully." United States v. Sanchez, 635 F.2d 47, 64 (2d Cir. 1980); see Gill v. City of N.Y., No. 15 Civ. 5513, 2017 WL 1097080, at *5-6 (E.D.N.Y. Mar. 23, 2017) (finding that plaintiff lacked standing to object to police entry of the apartment where plaintiff was an unlawful occupant).

Plaintiffs state that the alleged Fourth Amendment violations—unlawful entry and invasion of privacy—occurred on August 3, 2018, after the state court had granted Mirbourne title to the Property per the stipulation on July 30, 2018. See ECF No. 34 ¶¶ 37-38. That same day, Mirbourne was granted "immediate and complete possession of the Property" by court order. Id. ¶ 41. Plaintiffs therefore did not own the Property at the time of the alleged entry or reside there with the permission of the Property's owner, Mirbourne. See Sanchez, 635 F.2d at 63-64. On the facts as alleged by Plaintiffs in the complaints, nothing suggests that they had a

reasonable expectation of privacy in a Property that they no longer owned or had a right to reside at per the state court's order.  Id. at 64.  Although the Court ordered allowed for Mirbourne to authorize Plaintiffs to continue to stay at the Property, they do not allege that they had obtained such permission.  Plaintiffs' Fourth Amendment claims fail as a matter of law.

### b.  Qualified Immunity

City Defendants argue that, even if Plaintiffs could establish a reasonable expectation of privacy, the John Doe Kings County Sheriff deputies are entitled to qualified immunity from the Fourth Amendment claims for executing the eviction order.  See ECF No. 23 at 15-16.  Qualified immunity shields "government officials from liability for civil damages when their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355, 359 (2d Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  This also applies "insofar as it was objectively reasonable for [the government officials] to believe that their acts did not violate those rights."  Mollica v. Volker, 229 F.3d 366, 370 (2d Cir.2000).

Plaintiffs allege that the Kings County Sheriff deputies committed the alleged Fourth Amendment violations during their attempt to remove Plaintiffs from the Property pursuant to the state court's order.  See ECF No. 34 ¶ 64.  They do not allege that the officers exceeded the authority granted by the order.  Courts have found that officers enforcing a court order to remove people from a property are entitled to qualified immunity for acts authorized by the court order.  See Yan Ping Xu, 2021 WL 1163007, at *6 (holding that sheriff defendants were entitled to qualified immunity where they removed plaintiff from a property "in accordance with [] state court orders" to vacate); Tomassi v. Sheehan, No. 15 Civ. 3605 (JFB) (AYS), 2022 WL 4768826, at *7 (E.D.N.Y. Aug. 23, 2016), report & recommendation adopted, 2016 WL 4767539 (E.D.N.Y. Sept. 13, 2016) (holding that deputy sheriff defendants were entitled to qualified

immunity where they executed a court order to remove plaintiffs from a property because it was "objectively reasonable for the [d]efendants to rely on this information"); Chaney v. Stewart, No. 13 Civ. 246, 2015 WL 1538021, at *10 (D. Vt. Apr. 7, 2015) (holding that defendant police officer "acted in an objectively reasonable manner" when he assisted in evicting plaintiff and was thus entitled to qualified immunity); see also Wilson v. Sessoms-Newton, No. 14 Civ. 106 (PKC), 2017 WL 3575240, at *10 (E.D.N.Y. Aug. 17, 2017) (holding that defendants who entered a property were entitled to qualified immunity because of the "lack of clearly established law regarding the Fourth Amendment rights of trespassors").

Plaintiffs do not oppose City Defendants' qualified immunity argument or allege that the deputies acted unreasonably in obeying a "facially valid mandate of the court." Tornheim, 363 F. Supp. 2d at 677. "A federal court may deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in opposition papers the defendant's arguments for dismissal." Palmer v. City of New York, 564 F. Supp. 3d 221, 238 (E.D.N.Y. 2021) (dismissing plaintiffs' state constitutional claim when defendant moved to dismiss claim and plaintiffs failed to oppose) (citations omitted). Plaintiffs have thus waived any response to the individual City Defendants' qualified immunity argument. See Welcome v. New York City Dep't of Educ., No. 17 Civ. 5407 (NGG) (VMS), 2018 WL 5817156, at *4 (E.D.N.Y. Nov. 6, 2018) (granting motion to dismiss where plaintiff failed to respond to qualified immunity argument). The individual City Defendants are thus entitled to qualified immunity on this claim.

### 4. Excessive Force

Plaintiffs state that the excessive force occurred when the deputies "threatened to execute a false arrest/imprisonment" on August 3, 2018. ECF No. 34 ¶ 68. Although Plaintiffs state that they were subjected to excessive force, they do not allege that the Kings County deputies used force against them or caused any injury. Allegations of conduct that "causes no discernible

injury" or involves no use of force "fail[] to state a valid excessive force claim." Wilkins v.

Gaddy, 559 U.S. 34, 37 (2010).  "[T]o prevail on an excessive force claim, [a p]laintiff must

have suffered an actual injury that resulted from [the d]efendant['s] use of force." Portillo v.

Webb, No. 16 Civ. 4731 (VEC) (GWG), 2022 WL 2337380, at *9 (S.D.N.Y. June 29,

2022), report & recommendation adopted, 2022 WL 16736980 (S.D.N.Y. Nov. 7, 2022) (internal

quotation marks omitted); Mittelman v. Cty. of Rockland, No. 07 Civ. 6382, 2013 WL 1248623,

at *13 (S.D.N.Y. Mar. 26, 2013) ("[T]hreat of force does not constitute excessive force.").

"[C]ourts in this Circuit have long held that mere verbal abuse is not a § 1983 violation, insofar

as the [m]ere threatening language and gestures . . . do not, even if true, amount to constitutional

violations." Pelt v. City of New York, No. 11 Civ. 5633 (KAM) (CLP), 2013 WL 4647500, at

*13 (E.D.N.Y. Aug. 28, 2013) (internal quotation marks omitted); Ottley v. Proietti, No. 20 Civ.

2861 (RPK) (LB), 2022 WL 4586303, at *4 (E.D.N.Y. Sept. 29, 2022) ("Where no force is used,

of course, no excessive force exists."); Aziz Zarif Shabazz v. Pico, 994 F.Supp. 460, 474

(S.D.N.Y. 1998) (holding that a verbal threat, "unaccompanied by any injury[,] no matter how

inappropriate, unprofessional, or reprehensible it might seem," does not constitute a violation of

§ 1983) (internal citations omitted); see Purcell v. Coughlin, 790 F.2d 263 (2d Cir. 1986)

(holding that verbal harassment did not demonstrate excessive force because plaintiff "did not

allege any appreciable injury").  Plaintiffs also do not allege that the City Defendants drew or

used any weapons, only that they had their hands on their weapons. See ECF No. 34 ⁋ 42.  This

does not make out an excessive force claim. See Cerisier v. City of New York, No. 19 Civ. 3850

(ENV) (JRC), 2022 WL 3644796, at *4 (E.D.N.Y. July 20, 2022).  Here, Plaintiffs allege neither

use of force nor any injury so they fail to state an excessive force claim.

### 5.  Title VI

"To state a claim for a violation of Title VI, a plaintiff must show, through specific factual allegations, that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action."  Biswas v. City of New York, 973 F. Supp. 2d 504, 531 (S.D.N.Y. 2013)) (citing Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001)) (internal quotation marks omitted).[10]  Title VI does not provide for claims of malicious prosecution, but rather states that "[n]o person in the United States shall, on the ground of race, color, or national origin, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  In addition to their Section 1983 claims, Plaintiffs state that Defendants also "created a type of malicious prosecution" in violation of Title VI.  ECF No. 34 ¶ 54.  To the extent that Plaintiffs intended to raise a Title VI claim, they fail to allege any discriminatory act by City Defendants made on a prohibited basis.  Their Title VI claim fails as a matter of law.

### 6.  Sections 1985 And 1986

Plaintiffs claim that Defendants perpetrated a "conspiracy to deprive Plaintiff[s'] . . . Federally protected rights on or about July 30, 2018, to the present, in violation of 42 U.S.C. [§§] 1985 and 1986."  ECF No. 34 ¶ 66.  It is possible that Plaintiffs sought to allege that City Defendants conspired with Mirbourne, a non-City entity, but this is not clear from the face of the complaint.[11]

---

[10] The Supreme Court has held that Title VI creates a private right of action to sue for intentional discrimination.  See Alexander v. Sandoval, 532 U.S. 275, 279 (2001) ("[P]rivate individuals may sue to enforce . . . Title VI and obtain both injunctive relief and damages.").

[11] If Plaintiffs intend to allege that the City Defendants conspired with each other, courts in the Second Circuit have held that a single entity like the City cannot conspire with itself for the purposes of § 1985.  See Fed. Ins. Co. v. United States, 882 F.3d 348, 368 (2d Cir. 2018)

This claim is not legally viable.  First, § 1985 creates a civil action for damages against two or more persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ."  42 U.S.C. § 1985(3).  Plaintiffs do not allege facts that show any deprivation of the equal protection of the law or privileges and immunities under the laws. Second, a § 1985 conspiracy "must . . . be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus."  Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (internal quotation marks omitted); see Komatsu v. United States, No. 21 Civ. 1838, 2023 WL 317326, at *7 (S.D.N.Y. Jan. 19, 2023) (Section 1985 "requires that there be some racial or otherwise class-based invidious discriminatory animus for the conspiracy") (citing Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994)).  Plaintiffs fail to allege any racial or class-based discriminatory motivation by City Defendants.

Section 1986 provides a civil action for damages for any person who has knowledge of a § 1985 conspiracy and despite "having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do . . . ."  42 U.S.C. § 1986.  "[B]ecause a § 1986 claim must be predicated on a valid § 1985 claim," Plaintiffs' failure to state a § 1985 claim necessarily means they fail to state a § 1986 claim as well.  Brown v. City of Oneonta, New York, 221 F.3d 329, 341 (2d Cir. 2000) (internal quotation marks omitted); see Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993) ("[A] § 1986 claim must be predicated

---

(holding that "because employees acting within the scope of their employment are agents of their employer, an employer and its employees are generally considered to be a single actor, rather than multiple conspirators"); Minto v. Molloy Coll., No. 16 Civ. 276 (KAM) (AYS), 2021 WL 1394329, at *11 (E.D.N.Y. Jan. 21, 2021), report & recommendation adopted, 2021 WL 804386 (E.D.N.Y. Mar. 3, 2021) (holding that defendants "who are all employed by the same entity . . . are legally incapable of conspiring to violate [p]laintiffs' civil rights" for the purposes of stating a § 1985 claim).

upon a valid § 1985 claim."); Jean-Baptiste v. Montway LLC, No. 22 Civ. 5579 (PKC) (LB), 2022 WL 11213581, at *2 (E.D.N.Y. Oct. 19, 2022) (stating a § 1986 claim "explicitly requires an underlying conspiracy under Section 1985").

These claims fail as a matter of law.

### iii.  Statute of Limitations

The City Defendants also argue that Plaintiffs' federal claims are time-barred.  See ECF No. 24 at 10-12.  The Court agrees for the reasons explained below.

### 1.  42 U.S.C. § 1983 Claims

A Section 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013). Because § 1983 has no federal statute of limitations, courts borrow the "most analogous" state statute of limitations.  See Board of Regents v. Tomanio, 446 U.S. 478, 488 (1980).  In § 1983 actions, courts "borrow not only a state's limitations period but also its tolling rules, unless applying the state's tolling rules would defeat the goals" of § 1983.  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir. 2002) (internal quotation marks & citations omitted); see Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 2007) ("Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would defeat the goals of section 1983.") (internal quotation marks omitted). In New York State, the statute of limitations for actions brought pursuant to § 1983 is three years.  See Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009).

In order to apply the statute of limitations, the Court must look to the event with which the claim accrued, which varies by claim.  In this case, the relevant accrual standards are:

- As to the § 1983 property deprivation claim, it accrued on the date Plaintiffs knew or had reason to know of the property deprivation.  See Connolly v. McCall, 254 F.3d 36, 41 (2d

Cir. 2001) (holding that § 1983 claim for deprivation of property without due process accrued "when the plaintiff knows or has reason to know of the harm that he seeks to redress") (internal quotation marks omitted); Hogan, 738 F.3d at 518; Bey v. Westbury Union Free Sch. Dist., No. 21 Civ. 2048 (RPK) (PK), 2022 WL 900615, at *8 (E.D.N.Y. Mar. 28, 2022) (holding that § 1983 property deprivation claim "accrue[d] when the plaintiff knew or had reason to know of the property deprivation") (internal quotation marks omitted).

- A § 1983 privacy claim accrues when the alleged violation occurred.  See Jackson v. Suffolk Cnty. Homicide Bureau, 135 F.3d 254, 257-58 (2d Cir. 1998) (acknowledging that privacy claim accrued when alleged invasion of privacy took place); Hogan, 738 F.3d at 518; Lefebvre v. Morgan, 234 F. Supp. 3d 445, 459 (S.D.N.Y. 2017) (holding that Section 1983 privacy claims accrue on the date that the plaintiff "knows or has reason to know" of the privacy right violation) (internal quotation marks omitted).  An unlawful entry claim accrues when the alleged entry is made.  See Chamberlain Est. of Chamberlain v. City of White Plains, 960 F.3d 100, 106 (2d Cir. 2020) (acknowledging that unlawful entry claim accrued at the "moment of entry"); Hogan, 738 F.3d at 518; Ash v. City of New York, No. 16 Civ. 9548 (GHW), 2020 WL 58240, at *6 (S.D.N.Y. Jan. 6, 2020) (holding that § 1983 unlawful entry claim accrued on the day the alleged entry occurred).

- A § 1983 excessive force claim accrues at the time of the alleged excessive force incident.  See Hogan, 738 F.3d at 518 (holding that excessive force claim accrued on the date the alleged excessive force was used); Arafa v. New York, No. 22 Civ. 4475 (PKC) (MMH), 2022 WL 3867650, at *2 (E.D.N.Y. Aug. 30, 2022) (same).

- Section 1983 malicious prosecution claims accrue when the underlying proceedings are "conclusively terminated."  Moco v. New York City Police Dep't, No. 17 Civ. 5608 (PKC) (LB), 2018 WL 344968, at *2 (E.D.N.Y. Jan. 9, 2018); see Heck v. Humphrey, 512 U.S. 477, 489 (1994) (holding that a malicious prosecution claim does not accrue until the underlying proceedings "have terminated in the plaintiff's favor").

### 2.  42 U.S.C. §§ 1985, 1986 and Title VI

The statutes of limitations for claims under § 1985 and § 1986 are three years and one year, respectively.  See Paige v. Police Dep't, 264 F.3d 197, 199 n.2 (2d Cir. 2001); 42 U.S.C. § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").  Section 1985 and Section 1986 claims "generally accrue[] once the plaintiff knows or has reason to know of the injury which is the basis of his action."  Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994); see Hernandez v. City of New York, No. 21 Civ. 2397 (LGS), 2022 WL 2047577, *2-3 (S.D.N.Y. June 7, 2022) (finding that § 1986 claim accrued when plaintiff knew or had reason to know of the underlying injury).

As for Title VI claims, just as with § 1983, the three-year statute of limitations under New York law applies, and the claim accrued at the moment that Plaintiffs knew or had reason to know of their alleged injury.  See Morse v. Univ. of Vermont, 973 F.2d 122, 126 (2d Cir. 1992) ("In actions brought under Title VI of the Civil Rights Act . . . the federal trend is to look to the statute of limitations used in analogous federal discrimination actions such as those brought under 42 U.S.C. §§ 1981 and 1983."); Hogan, 738 F.3d at 518; Khalil v. Pratt Inst., No. 16 Civ. 6731 (JFB) (SIL), 2017 WL 8813136, at *6 (E.D.N.Y. Dec. 11, 2017), report & recommendation adopted, 2018 WL 705306 (E.D.N.Y. Feb. 2, 2018) ("Title VI claims are governed by a three-

year statute of limitations period which begins to accrue when a plaintiff knows or has reason to know of the injury which forms the basis of his action.").

### 3. Continuing Violation Doctrine

Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (internal quotation marks omitted). A continuing violation may be found "where specific and related instances of discrimination are permitted . . . to continue unremedied for so long as to amount to a discriminatory policy or practice." Id. "[D]iscrete incidents . . . will not ordinarily amount to a continuing violation." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir.1996). Courts have applied the continuous violation doctrine to § 1985 and § 1986 claims. See Cornwell, 23 F.3d at 703 (applying the continuous violation doctrine to § 1985 claim); Spector v. Bd. of Trustees of Cmty.-Tech. Colleges, 463 F. Supp. 2d 234, 252-53 (D. Conn. 2006) (§ 1986). "As a general matter, the continuing violation doctrine is heavily disfavored in the Second Circuit[,] and courts have been loath to apply it absent a showing of compelling circumstances." Nadolecki v. New York State Dep't of Tax'n & Fin., No. 09 Civ. 3888 (SJF) (ETB), 2011 WL 2446491, at *11 (E.D.N.Y. May 17, 2011), report & recommendation adopted, 2011 WL 2437481 (E.D.N.Y. June 15, 2011) (internal quotation marks omitted).

### 4. COVID Tolling Of The Statutes Of Limitations

Given that the statutes of limitations were running during the initial months of the COVID-19 pandemic, the Court considers whether any tolling may apply to these periods. On March 20, 2020, New York Governor Andrew Cuomo issued Executive Order 202.8, which "tolled" any "specific time limit for the commencement, filing, or service of any legal action"

until April 19, 2020; this deadline was extended by subsequent orders to November 3, 2020. N.Y. Comp. Codes R. & Regs. tit. 9 § 8.202.8; N.Y. Comp. Codes R. & Regs. tit. 9 § 8.202.67; see New York City Transit Auth. v. Am. Transit Ins. Co., 211 A.D.3d 643, 643, —N.Y.S.3d— (1st Dep't 2022) (stating that the executive orders tolling the statute of limitations "remained in effect until November 3, 2020").  The running of statutes of limitations affected by these orders was therefore suspended from March 20, 2020 through November 3, 2020, a period of 228 days. See Bermudez Chavez v. Occidental Chem. Corp., 158 N.E.3d 93, 35 N.Y.S.3d 492, 516 n.8 (N.Y. 2020) (a toll "merely suspends the running of the applicable statute of limitations for a finite and . . . readily identifiable time period" which is "excluded from the calculation of the time in which the plaintiff can commence an action"); Murphy v. Harris, 210 A.D.3d 410, 411, 177 N.Y.S.3d 559, 561 (1st Dep't 2022) ("[Executive Order 202.8] constituted a toll of the applicable statute of limitations" through to November 30, 2020); Am. Transit Ins. Co., 211 A.D.3d at 643 (holding that action was timely because the statute of limitations was tolled by Executive Order 202.8 until November 3, 2020, after which the "statute of limitations period began to run again"); Brash v. Richards, 1995 A.D.3d 582, 585, 149 N.Y.S.3d 560, 563 (2d Dep't 2021) (holding that action was timely because Executive Order 202.8 "tolled the time limitation . . . until November 3, 2020").

Because courts "borrow not only a state's limitations period but also its tolling rules" for § 1983 claims, Pearl, 296 F.3d at 80, Executive Order 202.8 applies here, see Bowers v. City of Salamanca, No. 20 Civ. 1206 (LJV), 2021 WL 2917672, at *6 (W.D.N.Y. July 12, 2021) (holding that "Executive Order 202.8 applies in section 1983 cases" because § 1983 cases are "subject to state tolling rules") (internal quotation marks omitted).  The tolling of the statute of limitations does not defeat the goals of § 1983, given that it provides plaintiffs with additional

time to seek redress for alleged constitutional violations.  See Tomanio, 446 U.S. at 488 (finding

two of the principal goals of § 1983 are "deterrence and compensation"); Connelly v. Komm,

No. 20 Civ. 1060 (JCH), 2021 WL 5359738, at *4 (D. Conn. Nov. 16, 2021) (holding that

Connecticut state executive order tolling the statute of limitations did not defeat the goals of

§ 1983 because it "grant[ed] [plaintiff] her day in court to seek compensation for her alleged

constitutional deprivation" and "further[ed] the goal of deterring abuses of power by state

officials").  Courts within the Second Circuit have found that Executive Order 202.8 tolled the

statute of limitations for § 1983 claims.  See Marquez v. Indian Taj, Inc., No. 20 Civ. 5855 (DG)

(RML), 2022 WL 4485948, at *2 (E.D.N.Y. Aug. 5, 2022), report & recommendation adopted,

2022 WL 4485185 (E.D.N.Y. Sept. 27, 2022) (collecting cases); Rivera v. City of New York,

No. 20 Civ. 9968 (GHW), 2022 WL 1523165, at *4 (S.D.N.Y. May 13, 2022) (finding that

§ 1983 claims were timely because the statute of limitations was "tolled between March 20, 2020

and November 3, 2020" pursuant to Executive Order 202.8).  "Executive Order 202.8 tolls the

statute of limitations for . . . [§] 1985 claims, which apply New York's three-year limitations

period . . . but not [] § 1986 claims, because the applicable statute of limitations for that claim is

found in the federal statute itself."  Rich v. New York, No. 21 Civ. 3835 (AT), 2022 WL 992885,

at *8 (S.D.N.Y. Mar. 31, 2022).  Although courts have not specifically held whether Executive

Order 202.8 applies to Title VI, claims under Title VI use the three-year New York statute of

limitations, and courts "have uniformly concluded that Executive Order 202.8 applies to federal

cases applying New York's statute of limitations."  Id.

City Defendants acknowledge the tolling effect of Executive Order 202.8 but argue that

Plaintiffs' claims are untimely even if the statute of limitations were tolled.  ECF No. 24 at 14.

As explained below, by applying the relevant statute of limitations to Plaintiffs' claims from each applicable accrual date, it is evident that City Defendants are correct.

### 5. July 30, 2018 Accrual

#### a. Sections 1983, 1985 and 1986

Plaintiffs filed the complaint on April 26, 2022.  See ECF No. 1.  Plaintiffs state that the Defendants deprived them of their property "on or about July 30, 2018," the date on which the state court issued its order finding that Mirbourne was entitled to the Property and that Plaintiffs were to vacate.  ECF No. 34 ¶ 56.  Factoring in the tolling of the statute of limitations for 228 days by Executive Order 202.8, the statute of limitations for the property deprivation claim under § 1983 expired on March 15, 2022, so Plaintiffs' claim is untimely.

In addition, Plaintiffs claim that Defendants perpetrated a "conspiracy to deprive Plaintiff[s'] . . . Federally protected rights on or about July 30, 2018, to the present, in violation of 42 U.S.C. [§§] 1985 and 1986."  ECF No. 34 ¶ 66.  Plaintiffs claim that Defendants perpetrated the conspiracy underlying the § 1985 and § 1986 claims "on or about July 30, 2018," rendering them untimely, even after factoring in tolling pursuant to Executive Order 202.8 for the § 1985 claim.  ECF No. 34 ¶ 66; Paige, 264 F.3d at 199 n.2.  Plaintiffs claim that the conspiracy entailed "fail[ure] to prevent the execution of a discriminatory and retaliatory trespass and eviction of Plaintiffs."  Id.  To the extent that this refers to the events of August 3, 2018, the date on which the Kings County Sheriff's deputies entered the Property, the § 1985 and § 1986 claims are still time-barred because they would have expired prior to the filing of the complaint.  See ECF No. 1.

Plaintiffs also state, however, that the conspiracy continued "to the present."  ECF No. 34 ¶ 66.  Construing the complaint liberally, the Court considers whether Plaintiffs alleged a continuous violation.  Plaintiffs allege that the conspiracy was one to "deprive Plaintiff of his

Federally protected rights" with the "eviction of Plaintiffs" pursuant to the July 30, 2018 order. ECF No. 34 ¶ 66.  Although Plaintiffs claim that their rights have been violated "to the present," id., their claim focuses only on their removal per the July 30, 2018 order.  Plaintiffs' loss of the Property due to the order may have continued to the present, but "continuing damages" are not sufficient to show a continuing violation, which "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct[.]"  Miller v. Metro. Life Ins. Co., 979 F.3d 118, 122 (2d Cir. 2020) (internal quotation marks omitted).  "Conversely, in cases where courts have applied the continuing violation doctrine, the defendants have committed continuing wrongful acts within the statutory period."  Panos v. Universal Forest Prod., Inc., No. 18 Civ. 2066 (KMK), 2020 WL 416445, at *7 (S.D.N.Y. Jan. 27, 2020), aff'd, 828 F. App'x 81 (2d Cir. 2020) (collecting cases).  Plaintiffs do not allege any other specific wrongful acts that concern the conspiracy claim, and point solely to their eviction pursuant to the July 30, 2018 order.  See Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011) (holding that continuous violations required a showing of "multiple, specific, and ongoing acts . . . on specific dates, as opposed to general assertions").  On its own, this eviction is merely a "discrete incident[]," which "will not ordinarily amount to a continuing violation."  Van Zant, 80 F.3d at 713.  Given the disfavored nature of the continuing-violations doctrine, Plaintiffs have not shown that it can be invoked here.  See Nadolecki, 2011 WL 2446491, at *11.

### b.  Title VI

Plaintiffs allege that the Title VI claim pertains to the events of "July 30, 2018 to the present."  ECF No. 34 ¶ 58.  To the extent that Plaintiffs' claims accrued on July 30 or August 3, 2018, they are untimely even with tolling by Executive Order 202.8.

If Plaintiffs intended to assert a continuous violation, "it is questionable whether the doctrine applies to claims brought under Title VI."  Martin v. State Univ. of New York, 704 F.

Supp. 2d 202, 234 (E.D.N.Y. 2010); Stone v. 23rd Chelsea Assocs., No. 18 Civ. 3869 (VSB), 2020 WL 1503671, at *7 (S.D.N.Y. Mar. 30, 2020) ("Unlike Title VII and Title VIII, which are broad prohibitions that apply to employers and landlords, respectively, that aim to compensate victims of discrimination, Title VI is essentially contractual in nature, and so a drastic expansion of its limitations period might exceed the goals of the statute.") (internal quotation marks omitted). Even if the doctrine were applicable to Title VI, Plaintiffs have failed to allege a continuous violation here. As with the §§ 1985 and 1986 claims, Plaintiffs do not identify any "continuing wrongful acts within the statutory period." Panos, 2020 WL 416445, at *7. Instead, the only incident they allege in connection to the Title VI claim is the purported violation of their rights on July 30, 2018. See ECF No. 34 ¶ 58. Whatever "continuing damages" Plaintiffs allegedly suffered from this violation are insufficient to show a continuing violation. Miller, 979 F.3d at 122. Absent any allegations of "multiple, specific, and ongoing acts . . . on specific dates, as opposed to general assertions," there is no basis to find a continuing violation here. Grimes, 785 F. Supp. 2d at 292.

### 6. August 3, 2018 Accrual

The claims that accrued with the events of August 3, 2018 are time-barred. As to the invasion-of-privacy claim under § 1983, Plaintiffs state that the violation occurred on August 3, 2018, when the Kings County Sheriff's deputies entered the Property. See ECF No. 34 ¶ 64. Taking into account the tolling from Executive Order 202.8, the statute of limitations of the invasion-of-privacy claim therefore expired on March 19, 2022, more than a month prior to the filing of the complaint. See Jackson, 135 F.3d at 257-58. The unlawful entry claim stems from the same alleged entry into the Property on August 3, 2018; thus, it is also time-barred despite tolling. See Chamberlain, 960 F.3d at 106. Plaintiffs state that the excessive force claim is based on the behavior of the deputies during their visit to the Property on August 3, 2018. See

ECF No. 34 ¶¶ 11, 67-69.  Because this claim also arises from the August 3, 2018 incident, it is time-barred.  See Hogan, 738 F.3d at 518 (holding that excessive force claim accrued on the date the alleged excessive force was used).

### 7.  February 20, 2020 Accrual

Here, Plaintiffs claim that Defendants "created a type of malicious prosecution" by their "interference with Plaintiff [Walker's] exercise of his rights to own [the] Property" through the foreclosure action.  ECF No. 34 ¶ 58.  Plaintiffs allege that the foreclosure action terminated "in February 2020," when the state court issued a judgment of foreclosure and sale for the Property.  ECF No. 34 ¶ 50.

As to the statute of limitations, the timeliness of Plaintiffs' malicious prosecution claim cannot be discerned from the face of the complaint because there is no determination of a criminal action to trigger the running of the statute of limitations.  See Moco, 2018 WL 344968, at *2.  Although Plaintiff refers to criminal justice concepts, see ECF No. 34 ¶ 58, Plaintiff does not allege any prosecution here; therefore, Plaintiffs do not allege a malicious prosecution claim, see Woods v. Dunlop Tire Corp., 972 F.2d 36, 39 (2d Cir. 1992) ("It is [the] identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [the plaintiff] chose to form [his] complaint.").

### d.  State Law Claims

Plaintiffs' remaining claims arise in state law.  They should all be dismissed against the City because Plaintiffs failed to allege that they complied with the General Municipal Law, and the state law claims are barred by the statutes of limitations.

### i.  Plaintiffs Failed To Allege They Filed A Notice Of Claim.

New York General Municipal Law §§ 50-e and 50-i require a plaintiff asserting a claim against a city that is based on the negligence or wrongful act of that city or its officers, agents, or

34

employees to file a notice of claim within 90 days of the incident that gives rise to the claim.  See Razzano v. Cty. of Nassau, 599 F. Supp. 2d 345, 354 (E.D.N.Y. 2009).  Under Section 50-i, a plaintiff is required to affirmatively plead in his complaint that he has filed a notice of claim, and that such notice was served at least 30 days prior to commencement of the action.  See Razzano, 599 F. Supp. 2d at 354; Davidson v. Bronx Mun. Hosp., 64 N.Y.2d 59, 484 N.Y.S.2d 533, 473 N.E.2d 761, 762-63 (1984).  "Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality." Diarra v. City of New York, 771 F. App'x 69, 71 (2d Cir. 2019) (quotations omitted). "Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." Hardy v. N.Y.C. Health & Hosps. Corp., 164 F.3d 789, 794 (2d Cir. 1999).  "The burden is on the plaintiff to demonstrate compliance with the notice of claim requirement." Matthews v. City of New York, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012); Horvath v. Daniel, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006) (citing Rattner v. Planning Comm'n of Vill. of Pleasantville, 156 A.D.2d 521, 526 548 N.Y.S.2d 943, 948 (2d Dep't 1989)).

Plaintiffs do not allege in the complaints or the opposition memorandum that they filed a timely notice of claim pursuant to N.Y. General Municipal Law § 50-i.  See ECF Nos. 1, 32, 34. For this reason, all state claims against the City are barred, and all state law claims sounding in negligence are dismissed.[12]

---

[12] The parties did not brief the question of whether a notice of claim must be filed as against individual municipal-employee defendants for intentional torts.  The Court does not address this question because additional briefing would be necessary, as required by this District Court in Palmer v. City of New York, 564 F. Supp. 3d 221, 241-42 (E.D.N.Y. 2021), and the claims should be dismissed on other grounds.

For state law claims subject to the notice-of-claim filing requirement, a plaintiff must commence the action on those claims within a year and ninety days from the date on which the cause of action accrues.  See Cotto v. City of New York, No. 15 Civ. 9123 (RWS), 2017 WL 3476045, at *8 (S.D.N.Y. Aug. 11, 2017) (citing N.Y. Gen. Mun. Law §§ 50-e and 50-i), aff'd, No. 17-2845, 2020 WL 1228765, 803 Fed App'x 500 (2d Cir. Mar. 13, 2020).  The Court will look at the dates of accrual in the next section, but the last possible date that Plaintiffs offer for the accrual of a cause of action was February 20, 2020.  See Peralta v. City of New York, No. 21 Civ. 6395 (JMF), 2022 WL 2805463, at *4 (S.D.N.Y. July 18, 2022) (finding state law claims barred because they were brought after the "absolute latest" filing date under the General Municipal Law).  One year and ninety days from that date was May 21, 2021.  This action was not filed until more than eleven months later, in April 2022, and thus was untimely.  See Destine v. City of New York, No. 20 Civ. 82 (LTS) (OTW), 2021 WL 5868158, at *3 (S.D.N.Y. Dec. 10, 2021).

### ii.  Plaintiffs' State Law Claims Are Time-barred.

The state law claims are time-barred, as explained below.

### 1.  Executive Law § 296

Causes of action alleging violations of Executive Law § 296 are governed by a three-year statute of limitations.  See N.Y. C.P.L.R. § 214(2); Koerner v. State of N.Y., Pilgrim Psychiatric Ctr., 62 N.Y.2d 442, 447, 478 N.Y.S.2d 584, 586 (1984).  The claims under Executive Law § 296 accrue and the statute of limitations begins to run at "that point in time when the plaintiff knows or has reason to know of the injury which is the basis of [his] action."  Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980).  Plaintiffs claim that the deprivation of property, invasion of privacy and trespass occurred when one or more of Defendants evicted him and his family from their home, which occurred on August 3, 2018 at the latest.  As discussed above, the COVID

tolling under state executive orders lasted for 228 days.  At best, the statute of limitations on these claims ran in March 2022, the month before this action was filed.

### 2.  New York State Constitution

Plaintiffs allege claims for invasion of privacy, unlawful entry and trespass under the New York State Constitution.[13]  Were these claims cognizable, they would be governed by the three-year statute of limitations drawn from New York's personal injury statute, N.Y. C.P.L.R. § 214(5).  See Weimer v. Lake, 268 A.D.2d 741, 742, 702 N.Y.S.2d 155, 157 (2000); Brown v. State, 250 A.D.2d 314, 318, 681 N.Y.S.2d 170, 173 (1998).  These claims fall on the same timeline as the claims alleged under New York Executive Law § 296, such that even with the protection provided by the COVID tolling orders, the claims were filed more than a month after the statute of limitations ran in March 2022.

### 3.  Plaintiffs Did Not Plead Common Law Torts Under State Law

Plaintiffs allege their state law claims with specific references to New York statutes, some of which applied to their claims, and some of which did not, as discussed above.  Plaintiffs also includes in the complaint headings that refer to common law torts: malicious prosecution,[14]

---

[13] The parties do not discuss whether claims for these torts allegedly arising under the New York State Constitution would be cognizable.  A long line of cases arising from Brown v. State of New York, 89 N.Y.2d 172, 192, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996), distinguishes between the narrow remedy of a private right of action for a "constitutional tort" when remedies are otherwise unavailable at common law or under federal law such as § 1983, and claims that are not cognizable because federal relief is available.  As discussed above in the section on federal claims, each of these torts, if sustained, could be remedied under federal law.  See Allen v. Antal, 665 F. App'x 9, 13 (2d Cir. 2016) (dismissing plaintiff's claims under New York State Constitution where a federal analogue existed).  This an additional reason these claims should be dismissed, but the Court does not recommend that at this time because the parties have not briefed this question.

[14] Plaintiffs allege their malicious prosecution claim arises under the New York Equal Access to Justice Act, N.Y. C.P.L.R. § 8601.  This statute provides for fee-shifting of costs and attorneys' fees in certain actions.  It does not give rise to substantive claims for malicious prosecution.

deprivation of property,[15] invasion of privacy,[16] unlawful entry and trespass.  The Court does not consider Plaintiffs to have pleaded these causes of action because, despite the headings, the paragraphs in the complaints do not discuss these claims.  As mentioned above, if Plaintiffs replead the complaint and they intended to raise these claims, they should raise them in the amended complaint to the extent they are viable.

## III.  Conclusion

For the reasons stated above, this Court respectfully recommends that the District Court grant the City Defendants' motion and dismiss all claims against the City Defendants: (1) the claims against the Department of Finance and NYCSO because they are non-suable entities; (2) the claims against the City for failure to state a claim of municipal liability; (3) the claims against Sheriff Fucito for lack of personal involvement; (4) the § 1983 deprivation of property, malicious prosecution, invasion-of-privacy, unlawful entry and excessive force claims and the § 1985, § 1986 and Title VI claims against the individual City Defendants for failure to state a claim; (5) the § 1983 Fourth Amendment claim against the individual City Defendants for executing the eviction order because of quasi-judicial immunity;  (6) all federal claims as untimely; and (7) the

---

[15] Plaintiffs allege deprivation of property, invasion of privacy, and trespass under New York Executive Law § 296.  ECF No. 23.  This New York Executive Law prohibits unlawful discriminatory practices in employment, public accommodation and housing.  Plaintiffs do not allege that the alleged torts were committed against them based on any characteristic protected under the New York Executive Law.

[16] Plaintiffs allege the state tort of invasion of privacy.  "New York State does not recognize the common-law tort of invasion of privacy except to the extent it comes within Civil Rights Law §§ 50 and 51."  Farrow v. Allstate Ins. Co., 53 A.D.3d 563, 563–64, 862 N.Y.S.2d 92, 93 (2d Dep't 2008) (citations omitted).  "These statutes protect against the appropriation of a plaintiff's name or likeness for a defendant's benefit and create a cause of action in favor of any person whose name, portrait, or picture is used for advertising purposes or for trade without the plaintiff's consent."  Id.  Plaintiffs do not allege any such violation.

state law claims because Plaintiffs failed to allege that they filed notices of claim or timely initiated this action after such filing, and because the claims are time barred.

The Court respectfully but reluctantly recommends that Plaintiffs be granted leave to replead the complaint within 30 days of the adoption of the report and recommendation, if adopted, but only as to those claims in which they can overcome the issues discussed here. The Court's hesitation in permitting Plaintiffs to replead is that all of the claims raised so far are barred by the statute of limitations, and repleading these claims is likely to be futile; however, Plaintiffs referred to several statutes and common law state claims in the pleading but did not allege any facts connected to those claims or plead all of the elements. It may be that Plaintiffs have a claim that could be developed among those citations. See Williams v. Bayview Loan Servicing, LLC, No. 14 Civ. 07427 (KAM) (LB), 2017 WL 11554146, at *1 (E.D.N.Y. Mar. 31, 2017) (dismissing pro se action after plaintiffs had had opportunity to re plead complaint). If Plaintiffs decide to replead, they are directed to pay particular attention to the statutes of limitations discussed above.

## IV.    Objections

This report and recommendation will be filed electronically. The Court will mail a copy of this report and recommendation to Van Douglas Walker, 545 Halsey Street, Brooklyn, NY 11233, and Iquane Wright-Walker, 545 Halsey Street, Brooklyn, NY 11233.

Written objections to this report and recommendation must be timely filed with the Clerk of the Court in accordance with the Individual Rules of the District Judge. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to

object timely to a magistrate's recommended decision, it waives any right to further review of

that decision") (internal citation & quotations omitted).

Dated:  Brooklyn, New York
        February 27, 2023

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge